+UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| APRIL MARIE CARLSON, | Civil Action No.: 18-13186 |
| | Honorable Terrance G. Berg |
| Plaintiff, | Magistrate Judge Elizabeth A. Stafford |
| v. | |
| ANDREW SAUL,<br>COMMISSIONER OF<br>SOCIAL SECURITY,[1] | |
| Defendant. | |

_____/

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 13, 14]

Plaintiff April Marie Carlson appeals a final decision of defendant Commissioner of Social Security (Commissioner) denying her applications for disability insurance benefits (DIB) and supplemental social security income benefits (SSI) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation under 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court **RECOMMENDS** that:

---

[1] Under Federal Rule of Civil Procedure 25(d), Saul is the successor defendant.

- Carlson's motion [ECF No. 13] be **DENIED**;

- the Commissioner's motion [ECF No. 14] be **GRANTED**; and

- the Commissioner's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

## I. BACKGROUND

### A. Carlson's Background and Disability Applications

Born in February 1983, Carlson was 32 years old when she applied for DIB and SSI in September 2015. [ECF No. 11-5, PageID.198, 204; ECF No. 13, PageID.728, 730]. She has a high school education, and past relevant work experience as a security guard and customer service manager. [ECF No. 16-2, PageID.62-63]. Carlson alleges a disability onset date of September 8, 2015, and that she is disabled because of migraine headaches and lower back pain. [ECF No. 11-3, PageID.113-114].

After the Commissioner denied both disability applications initially, Carlson requested a hearing, which took place in August 2017, and during which she and a vocational expert (VE) testified. [ECF No. 11-2, PageID.69-100]. In a December 2017 written decision, the ALJ found Carlson not disabled. [*Id.*, PageID.51-64]. The Appeals Council denied

review, making the ALJ's decision the final decision of the Commissioner, and Carlson timely filed for judicial review.  [*Id.*, PageID.36-39; ECF No. 1].

### B. The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[2]  Second, if the claimant has not had a severe impairment or a combination of such impairments[3] for a continuous period of at least 12 months, no disability will be found.  *Id.*  Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled.  *Id.*  If the fourth step is reached, the Commissioner

---

[2] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.
[3] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  § 1520(c); § 920(c).

3

considers its assessment of the claimant's residual functional capacity and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Carlson was not disabled. At the first step, she found that Carlson had not engaged in substantial gainful activity since her alleged onset date. [ECF No. 11-2, PageID.57]. At the second step, the ALJ found that Carlson had the severe impairments of a spine disorder and migraines. [*Id.*]. Next, the ALJ concluded that none of Carlson's impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, PageID.58].

Between the third and fourth steps, the ALJ found that Carlson had the RFC to perform sedentary work except, "[T]he claimant requires the ability to change positions every 30 minutes for up to 30 minutes at a time. The claimant can only occasionally climb, stoop, crouch, crawl, or kneel.

The claimant must avoid unprotected heights and dangerous moving machinery." [ECF No. 11-2, PageID.58].  At step four, the ALJ found that Carlson could not perform past relevant work as a security guard and customer service manager.  [*Id.*, PageID.62].  But after considering Carlson's age, education, work experience, RFC and the testimony of the VE, the ALJ found that Carlson could perform other jobs in the national economy, including as a reception and information clerk, an office clerk and a bench assembler.  [*Id.*, PageID.63].

## II.    ANALYSIS

### A.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted).  Only the evidence in the record below may be considered when determining

whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Carlson argues that the ALJ erred in assessing her RFC and that her case should be remanded because of new and material evidence. [ECF No. 13, PageID.743-751]. The Court finds that substantial evidence supports the ALJ's RFC finding, and that Carlson has not met her burden of showing that her new evidence is material. Thus, the ALJ's decision should be affirmed.

**B.**

Carlson argues that the medical records relied on by the ALJ do not support an RFC of sedentary work. [ECF No. 13, PageID.743-748]. She contends that the ALJ did not properly consider her continued "intense pain," improperly "played doctor" and wrongfully insinuated that Carlson "was seeking narcotic medication." [ECF No. 13, PageID.745-748]. She also asserts that the ALJ "vague[ly] referenced record inconsistencies" and did not "provide an objective and reviewable reason" for the RFC. [ECF No. 13, PageID.744-748]. Carlson bears of proving that she requires a more restrictive RFC than that assessed by the ALJ. *Preslar*, 14 F.3d at 1110. She does not meet her burden.

6

Carlson underwent three lumbar spine surgeries—in May 2017, August 2017 and June 2018—the latter being after the ALJ's decision.[4] [ECF No. 11-2, PageID.60-61, 83; ECF No. 11-6, PageID.297-298, ECF No. 13-1, PageID.754-758]. The ALJ considered the first two surgeries, as well as Carlson's chronic low back pain, lumbar spine disorder and migraine headaches, but found that "[m]ost of the diagnostic testing noted only mild abnormalities and the majority of the clinical examinations noted essentially normal results." [ECF No. 11-2, PageID.62]. The ALJ concluded that "there is no reasonable indication in the available medical evidence of record that additional or more restrictive limitations would be warranted." [*Id.*, PageID.62]. This conclusion is supported by substantial evidence.

First, the ALJ's finding that Carlson required sedentary work is more restrictive than the RFC assessed by B.D. Choi, M.D., the state agency medical consultant. Dr. Choi opined that Carlson could perform light work. [ECF No. 11-3, PageID.109-110, 118-119]. Courts have found RFC assessments to be supported by substantial evidence when they are more

---

[4] Carlson submitted the records from the June 2018 surgery to the Appeals Council. [ECF No. 11-2, PageID.37-46; ECF No. 13, PageID.745]. The Appeals Council found that the records did not relate to the period at issue. [ECF No. 11-2, PageID.37].

7

restrictive than the opinion evidence. *Mosed v. Comm'r of Soc. Sec.*, 2016 WL 6211288, at *7 (E.D. Mich. Jan. 22, 2016), *adopted*, 2016 WL 1084679 (E. D. Mich. Mar. 21, 2016); *Taylor v. Berryhill*, 2018 WL 344984, at *4 (W.D. Ky. Jan. 9, 2018); *Chess v. Berryhill*, 2019 WL 845986, at *7 (E.D. Tenn. Jan. 3, 2019). Here, the ALJ found that an RFC with a reduced range of sedentary work, with a sit/stand option, was more appropriate given Carlson's "persistent attempts at treatment in an effort to relieve her symptoms." [ECF No. 11-2, PageID.61]. Dr. Choi's RFC opinion undermines both Carlson's claim that the ALJ's RFC assessment was not supported by substantial evidence and her argument that the ALJ impermissibly "played doctor."

In addition, the ALJ provided objective and reviewable reasons for the RFC finding in relation to Carlson's spine disorder and migraine headaches.

### 1. Lumbar Spine Disorder

The ALJ considered Carlson's history of lumbar spine disorder, including her medical imaging and treatment records. [ECF No. 11-2, PageID.59-62]. Nerve conduction studies performed in November 2015 showed normal motor and sensory conduction velocities and distal latencies. [ECF No. 11-2, PageID.60; ECF No. 11-7, PageID.450]. A

September 2016 CT scan of Carlson's lumbar spine showed no focal disc herniation, stenosis, fracture or subluxation and normal vertebral body and disc space heights. [ECF No. 11-2, PageID.60; ECF No. 11-8, PageID.595-596].

A February 2016 MRI revealed "stable appearance of the lumbar spine with no evidence of epidural abscess or pathologic enhancement. Mild lumbar spondylosis is redemonstrated without significant stenosis." [ECF No. 11-2, PageID.60; ECF No. 11-8, PageID.650]. Carlson's "vertebral body heights and alignment [were] stable and maintained," but she had minor multilevel disc bulges. [ECF No. 11-8, PageID.650].

The ALJ also considered Carlson's June 2016 MRI findings, which revealed a dehydrated bulging disc at L2-L3 and a herniated disc at T8-T9. [ECF No. 11-2, PageID.60; ECF No. 11-8, PageID.692-693]. Her lumbar vertebra was normal in signal and height, paraspinous soft tissues "unremarkable," T12-L1, L1-L2 and L3-L4 through L5-S1 disks were normal, and her thoracic vertebra and spinal cord appeared normal. [ECF No. 11-8, PageID.692-693]. A May 2017 MRI revealed "interval development of slight bulging of the disc at L2-L3, interval development of a left central herniation at L5-S1, and straightening of the lumbar lordotic curve." [ECF No. 11-2, PageID.60-61; ECF No. 11-8, PageID.695-696]. In

9

June 2017, the MRI showed diffuse disc bulge with a superimposed broad-based midline protrusion abutting the bilateral transiting S1 nerve roots and encroachment upon the inferior aspect of the neutral foramina bilaterally abutting the bilateral exiting L5 nerve roots. [ECF No. 11-2, PageID.61; ECF No. 11-8, PageID.698]. The MRI overall showed no significant interval change or areas of abnormal enhancement. [ECF No. 11-8, PageID.698].

These studies support Carlson's claim, and the ALJ's finding, that she suffered from a severe spinal disorder. Even so, the treatment notes considered by the ALJ support her finding that Carlson had an RFC for a limited range of sedentary work. In January 2016, Jawada Shah, M.D., was "very hesitant to offer any type of surgery" because there was no "dramatic disc herniation" and because the EMG and nerve conduction studies were negative for neuropathy. [ECF No. 11-2, PageID.60; ECF No. 11-8, PageID.685]. At an August 2016 follow-up visit, Dr. Shah stated that, although there were discogenic changes, "it certainly is not profound" and neither surgery nor aggressive treatment were recommended. [ECF No. 11-2, PageID.60; ECF No. 11-8, PageID.683].

In March 2016, Josephine Bello, M.D., Carlson's primary care doctor, noted that Carlson was ambulatory without support and driving. [ECF No.

10

11-2, PageID.59; ECF No. 11-7, PageID.384]. Carlson asked Dr. Bello to write a letter to an insurer supporting Carlson's request for assistance with household chores, but Dr. Bello believed that Carlson could perform her activities of daily living, and thus denied the request. [ECF No. 11-2, PageID.59; ECF No. 11-7, PageID.384]. Dr. Bello refilled Carlson's medications, and advised Carlson about conservative and preventative measures, including lower back exercises. [ECF No. 11-7, PageID.384].

In treatment notes from June 2016, Dr. Bello wrote that Carlson "continues to drive and has been working as a direct care person." [ECF No. 11-7, PageID.378]. In August 2016, Dr. Bello again noted that Carlson was still driving, was ambulatory without support, and working in patient care. [ECF No. 11-2, PageID.60; ECF No. 11-7, PageID.374]. Her physical examination showed no deficits in strength or range of motion, and she transitioned from a lying position to sitting quickly and without visible pain. [*Id.*].

The medical records confirm that Carlson suffered from a spinal disorder, but also provide substantial evidence for the ALJ's decision that Carlson had an RFC for sedentary work despite her limitations. *See* 20 C.F.R. § 404.1545(a)(1) ("Your residual functional capacity is the most you can still do despite your limitations.").

11

### 2. *Migraines*

Carlson argues that the ALJ briefly discussed her migraine headaches and discounted the "seriousness" of them despite the "multiple treatment visits," including to urgent care. [ECF No. 13, PageID.746-747]. She alleges that the migraines "were triggered by bright lights, loud noises, and strong smells," and can last "from two up to 24 hours." [*Id.*, PageID.746]. In support of her argument, Carlson cites Dr. Bello's medical notes stating that her "migraines are frequent." [*Id.*, PageID.747 (citing ECF No. 11-7, PageID.380)]. But Carlson fails to meet her burden of showing that she requires a more restrictive RFC for her migraine headaches.

The ALJ found that, despite Carlson's complaints of "6 to 7 migraines per month, the medical evidence of record documents very few instances of treatment for migraines with several months in between office visits." [ECF No. 11-2, PageID.62]. In January 2015, Carlson received a Toradol injection from Dr. Bello. [ECF No. 11-2, PageID.61; ECF No. 11-7, PageID.327]. She did not return to Dr. Bello with complaints of migraines until September 10, 2015, and she said then that her migraines were "exacerbate[ed]" by the stress of being fired from her job. [ECF No. 11-2, PageID.61; ECF No. 11-7, PageID.307]. Dr. Bello discussed behavioral

relaxation with Carlson, but Carlson declined Dr. Bello's referral to a behavioral therapist. [ECF No. 11-2, PageID.61; ECF No. 11-7, PageID.307].

In October 2015, Carlson stated in the disability determination headache questionnaire that the medication she took for her migraine headaches, Topamax and Cambia, "help[ed] to reduce the amount of migraines [she got]." [ECF No. 11-6, PageID.254]. In May 2016, Dr. Bello referred Carlson to a neurologist because of her migraine headaches, but as noted by the ALJ, there is nothing in the record that shows Carlson sought treatment for the migraines from the neurologist. [*See* ECF No. 11-2, PageID.61; ECF No. 11-7, PageID.380]. The record also reflects many occasions in which Carlson denied suffering from headaches. In May, June, August and September 2017, Carlson reported "[n]o headaches," memory deficits, dizziness, nausea, vomiting or blurred vision. [*See* ECF No. 11-7, PageID.358; ECF No. 11-9, PageID.703, 713, 721].

Carlson refers to a February 2008 finding by another ALJ that she was disabled by migraine headaches, but she also notes that she returned to work two years later and worked for "a number of years" because she "was able to get [the migraines] under control." [ECF No. 13, PageID.746-747]. The ALJ acknowledged that earlier decision, stating that the benefits

13

awarded to Carlson in February 2008 were terminated "due to the claimant's return to work at substantial gainful activity levels." [ECF No. 11-2, PageID.55, 76-77]. The ALJ was not bound by the prior decision that Carlson was disabled during that earlier period. *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 933 (6th Cir. 2018). And Carlson fails to explain the relevance of her earlier, temporary period of disability.

The Court finds that the ALJ's RFC finding is supported by substantial evidence, and thus should be affirmed. "If the Commissioner's decision applied the correct legal standards and is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion." *Moran v. Comm'r of Soc. Sec.*, 40 F. Supp. 3d 896, 914 (E.D. Mich. 2014).

## C.

Carlson requests that the Court remand this matter so that the ALJ can consider "new" and "material" evidence in medical reports from the third surgery. [ECF No. 13, PageID.748-751]. But Carlson fails to meet her of burden of showing that the ALJ would have found that she could not perform work consistent with her RFC after considering the new evidence.

Generally, if the Appeals Council declines to review an ALJ's decision, federal courts cannot consider evidence not presented to the ALJ. *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Sentence Six of the Act permits remand only when a later adjudicator is presented with "new evidence which is material and that there is good cause for the failure to incorporate such evidence in to the record in a prior proceeding." 42 U.S.C. § 405(g). Carlson must show that the records in question are "new," as in "not in existence or available to the claimant at the time of the administrative proceeding." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (internal quotation marks and citation omitted). Evidence is "material" if there is a "reasonable probability" that the ALJ would have reached a different decision if the new evidence were considered. *Id.* It is the claimant's burden to show that remand for consideration of new evidence is warranted. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2002).

Here, in June 2018, Kevin Lawson, M.D., performed a third surgery on Carlson's spine, finding that the prior attempted fusion of her lumbar disc had failed. [ECF No. 13, PageID.748-749; ECF No. 13-1, PageID.754-758]. Dr. Lawson's records are "new"; they did not exist before the ALJ's December 2017 decision. But the Court finds that Dr. Lawson's records are not material.

In support of Carlson's argument that Lawson's records are material, she asserts that the third surgery confirms that her "complaints of disabling pain were fully credible." [ECF No. 13, PageID.749]. The Court sees it differently. Dr. Lawson's records show that Carlson experienced pain and had limitations because of her spinal impairment, but not that she is disabled. The records merely provide a diagnosis and detailed surgery notes. [*See* ECF No. 13-1, PageID.754-758]. A diagnosis, alone, does not dictates a finding of disability or the need for greater physical restrictions. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).

At bottom, Dr. Lawson's records do not show a reasonably probability that Carlson could not perform a limited range of sedentary work, as assessed by the ALJ. Thus, Carlson has not established the ALJ would have reached a different decision had she considered Dr. Lawson's medical reports. She has not met the burden of showing that Dr. Lawson's records are material, and remand for consideration of those records is not warranted.

### III.   CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Carlson's motion for summary judgment [ECF No. 13] be **DENIED**; that the Commissioner's motion [ECF No. 14] be **GRANTED**; and the ALJ's

decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

|  |  |
|---|---|
| Dated: January 13, 2020 | s/Elizabeth A. Stafford<br>ELIZABETH A. STAFFORD<br>United States Magistrate Judge |

### **NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and

Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 13, 2020.

                                              s/Marlena Williams
                                              MARLENA WILLIAMS
                                              Case Manager